THE STATE v. WILLIAM STEVENS, HENRY STEVENS, HENRY CARPENDER AND FRANCES HALL, DEFEND- ANTS.

Argued September 23, 1926—Decided September 24, 1926.

1. An application for a trial by a foreign jury is addressed to the discretionary power of the court, and this power should not be exercised unless it clearly appears that a fair and impartial trial cannot be had before a jury of the county in which the indict- ment is laid.
2. Where the affidavits relied on by the state are not clear and con- vincing that a fair and impartial trial by the petit jury, as summoned, cannot be had, an application for a foreign jury will be denied.

On motion for foreign jury.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the motion, *Francis L. Bergen,* prosecutor of the pleas of Somerset county; *Alexander Simpson,* assistant attorney- general.

*Contra, Robert H. McCarter* and *Clarence H. Case.*

The opinion of the court was delivered by

KALISCH, J. The defendants were, on September 15th, 1926, indicted by the Somerset county grand jury of the April term, 1926, for the murder of Eleanor Mills. A like indictment was found against the same defendants for the murder of Edward W. Hall. The murders are alleged to have been committed on September 14th, 1922, in Somerset county. No one of the defendants is a resident of Somerset county.

It appears that a panel of two hundred and fifty petit jurors and a panel of one hundred and sixty struck jurors have been summoned by the jury commissioners of Somerset

county for service during the September term, 1926. On behalf of the state, application is made to the court, due notice of such application having been given to the attorneys of the defendants, for a foreign jury, under section 78 of the Criminal Procedure act (2 *Comp. Stat., p.* 1845), which reads as follows:

"The Supreme Court may, in its discretion, order trials by foreign juries in all criminal cases which may have been commenced in that court, or may be removed to that court from any other court, and whenever in their opinion a fair and impartial trial cannot be had before a jury of the proper county, may, upon motion in behalf of the state or on the part of any defendant, order any indictment found at any Court of Oyer and Terminer, or at any Court of Quarter Sessions, to be tried by a foreign jury in the court and county in which such indictment was found."

On the argument the point was made by counsel of the defendants, that the court was without jurisdiction to hear the motion, because the cause had not been first removed by writ of *certiorari* to the Supreme Court, and that this was essential to give the court jurisdiction to deal with the matter. Inasmuch as counsel waived the objection and consented during the argument that the court should hear and determine the application, it is not necessary to pass on the mooted question.

It is to be observed that, by virtue of the statute, the application is addressed to the discretionary power of the court. This can mean no less than the exercise of sound judicial discretion. As was said in State *v.* Dedge, unreported, this power should not be exercised unless the case is a clear one. The circumstance that there are precedents of civil and criminal cases in which foreign juries have been ordered furnishes no precedent to be followed except in one respect, that is, that courts in proper cases have ordered foreign juries. So, after all, the single question is, can a fair and impartial trial be had before a jury of Somerset county? The state claims that so far as it is concerned a fair and impartial trial cannot be had. To sustain its contention it urges, first, that

the sheriff of Somerset county is hostile to the interest of the state in its prosecution of the defendants. In support of this charge is an affidavit of Mr. Bergen, the prosecutor, who says he met the sheriff on September 15th, 1926, in the Somerset county court house, and was asked by that official if the grand jury was meeting, and when informed that it was, the sheriff said "that it was very funny he had not been told about it officially, that there were no constables of his there and that he would have nothing to do with it," and that he refused later to speak to him (Mr. Bergen). We cannot perceive anything in what the sheriff said or in his feeling indignant because he was ignored in the performance of an official act that allows a permissible inference that he was, or would be, hostile to the interests of the state. For it must be borne in mind it was this grand jury which he had participated in summoning for the April term which found the indictments for murder against the defendants.

Another affidavit in support of the charge is that of John Underwood, an inspector of the police department of the city of Jersey City, who has been investigating the case for the state. Mr. Underwood makes the general statement that the sheriff has taken no pains to conceal his displeasure at the investigation being made; that on the day the grand jury met he practically ordered the special prosecutor out of his office; that he ordered one of his investigators from his office; that he was a member of the grand jury which found no bill against the defendants four years ago, and "that he has expressed himself to divers persons as being personally affronted because of the investigation now going on of this homicide," &c.

It must be observed that all his averments are conspicuous for their generality. He makes no effort to name anyone to whom the sheriff has expressed himself as hostile to the investigation or to the state's interest. On the other hand, the sheriff in an affidavit denies the statements made by Mr. Underwood, and denies that he has ever expressed himself as hostile to the state's interest, and that he has been and is faithful and loyal to the state's interest.

The only other affidavit relied on by the state to establish the alleged hostility of the sheriff is that of William L. Thompson, who says that a Mr. Garretson, in discussing the proposal of a foreign petit or trial jury, denounced it as a slur against the integrity of the citizenry of Somerset county, and that Garretson is a member of the grand jury drawn for the 21st of September, 1926, is the county treasurer and is a republican. In what manner this evinces hostility on the part of the sheriff to the state's interest has not been made plain to us. We think the finding of an indictment against the defendants by a grand jury, in the making up of which the sheriff participated under the Jury act, the summoning for the September term of two hundred and fifty petit jurors and one hundred and sixty struck jurors, whose competency, fairness and impartiality have not been assailed, are cogent circumstances to repel the charge made against the sheriff of being hostile to the state's interest.

Much stress was placed by counsel of the state, in his argument, upon the fact of the publication in three local newspapers of matter which censured in strong terms the state's investigation of the circumstances of the murder after the subject-matter had been considered and disposed of by two grand juries, and further represented that great expense was being, and would be, incurred in continuing the investigation, all of which expense would have to be borne by the owners of real estate and taxpayers of Somerset county; that the public mind has become so inflamed and prejudiced against the investigation that a fair and impartial trial cannot be had. In plain terms, the contention is that a prospective juror who is a taxpayer would be so incensed against the state because of increased burden of taxation put upon him by reason of the investigation that regardless of his oath to determine the case upon the evidence adduced in court, he would be influenced by the newspaper articles to disregard his oath and commit moral perjury. That these newspaper articles would have no such dreaded effect upon conscientious jurors, as claimed by the state, has been clearly demonstrated by the fact that though these newspaper articles were pub-

lished before any indictments were found against the defendants, and though one of the owners or editors of the newspaper in which one of the censured articles appeared, was a member of the grand jury, representative citizens and taxpayers of Somerset county found indictments against the defendants. This circumstance alone is sufficient to convince this court that the fear which counsel of the state apprehends, that a petit jury will be influenced by the published clippings, is more chimerical than real.

The affidavits relied on by the state are far from being clear and convincing that a fair and impartial trial by the petit jury, as summoned, cannot be had, and, therefore, the application for a foreign jury is denied.

Mr. Justice Katzenbach authorizes me to say that he concurs in the views and conclusion herein expressed.